# United States District Court

_____SOUTHERN_____ DISTRICT OF _____FLORIDA_____

UNITED STATES OF AMERICA

V.

JOHN PALMER

**CRIMINAL COMPLAINT**

CASE NUMBER: 00-4010-BSS

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __Jan. 4, 2000 - Jan. 7, 2000__ in __Broward__ county, in the __Southern__ District of __Florida__ defendant(s) did, (Track Statutory Language of Offense)

knowingly attempt to persuade, induce, entice, and coerce an individual under eighteen years of age to engage in a sexual act for which any person can be charged with a criminal offense, by using a facility and means of interstate commerce, that is, a computer and modem with access to the Internet via America On-line, and a telephone; and did knowingly possess a computer and other material that contained three (3) or more images of child pornography that had been transported and shipped in interstate commerce

in violation of Title __18__ United States Code, Section(s) __2422(b) and 2252A(a)(5)__

I further state that I am a(n) __Detective__ and that this complaint is based on the following
Official Title
facts:

Please see attached affidavit.

Continued on the attached and made a part hereof:    [x] Yes  [ ] No

Signature of Complainant, SA-FBI
TERRI D. PATTERSON
Special Agent, FBI

Sworn to before me, and subscribed in my presence,

January 21, 2000                                at  Ft. Lauderdale, FL
Date                                                City and State

BARRY S. SELTZER
U.S MAGISTRATE JUDGE
Name and Title of Judicial Officer

## AFFIDAVIT

I, Special Agent Terri D. Patterson, being duly sworn, do hereby depose and state that:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the Miami Division. I have been employed with the FBI for the past two years as a special agent. For the past one and one-half years, I have been assigned to the Violent Crimes/ Fugitive Task Force, where my investigative duties include crimes against children and fugitive matters. I have conducted several investigations involving child exploitation and child pornography violations.

2. The statements contained in this affidavit are based on my own personal knowledge as well as information provided by other law enforcement officials and civilians.

3. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, your affiant has not included each and every fact known concerning this investigation. Your affiant has set forth only those facts believed to be necessary to establish probable cause to believe that Defendant JOHN PALMER, violated Title 18, United States Code, Sections 2422(b) and 2252A(a)(5).

4. On Tuesday, January 4, 2000, Detective Richard Love from the Fort Lauderdale Police Department, Special Investigations Unit, signed onto Internet service provider America On-Line in an undercover capacity. Detective Love used the screen name RICHIE0961, which had the profile of a fourteen (14) year old boy. Detective Love

went into the chat room "BI-DADS" and typed the words, "Anyone from Fort Lauderdale here".

5. Shortly thereafter, Detective Love received an instant message from a person with the screen name "GOODDADDY9999" (later identified as defendant JOHN PALMER) which text said, "hello Richie, I'm John in Fort Lauderdale looking to spoil younger guy." This began an on line conversation where PALMER offered Detective Love money, a scanner, a digital camera and a leather jacket for sexual favors. In explicit language PALMER described what he wanted to do to Detective Love (He wrote, "i like to suck a young guys cock and balls and tongue his ass and make him feel good"). He stated he knew it was illegal to have sex with anyone under the age of eighteen (18) years of age and that Detective Love would have to keep it a secret so no one got into trouble. In this on–line conversation, Detective Love (working in an undercover capacity) stated more than once that he was fourteen (14) years old.

6. PALMER then sent a picture of himself to Detective Love with a text that said, "I'm JOHN 6'1 brown hair blue eyes 185# playful gent that loves to please and play". Towards the end of the contact, PALMER kept asking Detective Love for a telephone number so he could call. He gave Detective Love his voice pager number (1-800-317-2587), so Detective Love could contact him and tell him when it was okay to call. Detective Love gave PALMER a telephone number which is an undercover telephone number at the Fort Lauderdale Police Department's Special Investigations Division and told him it was okay to call.

7. On January 4, 2000, PALMER called Detective Love on the telephone. The conversation consisted of PALMER identifying himself as JOHN. He stated he wanted to teach Detective Love all about sex and that he would get a motel for this purpose. PALMER and Detective Love then made arrangements to meet on the computer the next day (01-05-00) between 1100 hrs. and 1200 hrs.

8. On Wednesday, January 5, 2000, Detective Love signed onto American On-line in the same undercover capacity. Detective Love waited for "GOODDADDY9999" to contact him. Later after having no contact with PALMER, Detective Love sent him an E-mail which said, "I looked for you on the computer like you said but you weren't on.... I'll be home from school tomorrow at 3:00 and get on so we can talk'.

9. On Thursday, January 6, 2000, Detective Love signed onto Internet service provider American On-line in the same undercover capacity and observed in the mailbox section an E-mail sent from "GOODDADDY9999" on 01-05-00. The e-mail said "Hello Richie, I have been busy working all day...Of course I remember and thought about you too...I would have called you today but never will unless you tell me to and when...I really hope you are better...Just dial 800# and follow directions."

10. On Thursday, January 6, 2000, Detective Love called PALMER's 800 number and left the message this is RICHIE you can call me now. Shortly thereafter, Detective Love answered the undercover telephone. The caller identified himself as JOHN and stated that he really wanted to meet with Detective Love who asked PALMER if he was going to get a hotel room like he previously said. PALMER stated he would take care of that before he met Detective Love.

3

11. Detective Love and PALMER made arrangements to meet at the Imperial Point Park located at the Northwest section of Imperial Point Hospital, 6401 North Federal Hwy. Fort Lauderdale, FL. at twelve noon on Friday, January 7, 2000. Detective Love asked PALMER how he would recognize him and PALMER said he would be driving a teal green, almost dark blue, Volvo Coupe. Detective Love told PALMER that he would be wearing a blue New York Yankees baseball cap and be on the swings.

12. PALMER did not know how to get to the park and asked Detective Love for directions. The caller I.D. indicated that this call came from the same number as the previous call from PALMER. That telephone number is listed to Matt Ottossson, 1500 South Ocean Blvd., #1502, Pompano Beach, Florida.

13. Detectives from the Fort Lauderdale Police Department then went to 1500 South Ocean Drive Pompano Beach, Florida and located a navy blue Volvo in the parking lot. The vehicle bore Georgia Tag 97GK8. The registration shows it is registered to BERNADETTE PALMER, 3341 Cross Road, Bufford, GA. It lists it as a blue 1996 Volvo four door. Detective Love conducted a real-estate search on the property and it showed that a BERNADETTE PALMER owns 1500 South Ocean Blvd. #1502. An associate check showed that a JOHN PALMER born May 26, 1932 is associated with BERNANETTE PALMER at that address.

14. On Friday, January 7, 2000, surveillance agents observed PALMER go to the adult store ROMANTIX EMPOURIUM located in the 3200 block of North Federal Hwy. PALMER exited ROMANTIX EMPOURIUM carrying a bag and drove to the park. He

4

circled the park where he was to meet Detective Love. He circled the park on two separate occasions.

15. PALMER then went to the FAIRFIELD INN, 5727 N. Federal Highway and rented a room (room number 109). PALMER left the motel and went directly to the park where he was to meet Detective Love.

16. At the park, Detective Love, along with other law enforcement officers, observed a navy blue Volvo park on the East side of the park. A white male exited and walked to the fence waving his hands. It appeared that this was an attempt to obtain the attention of the undercover officer who was posing as 14 year old "Richie". This individual was then taken into custody and identified as JOHN PALMER.

17. Detective Love identified himself as a police officer and said to PALMER, "I am RICHIE, the boy you have been talking to". PALMER then stated, "I know, I'm a bad man." Detective Love advised him that he was aware of the hotel room he had gone to and requested permission to search and seize any item in the room. PALMER agreed and signed a Consent to Search Form.

18. Detective Love then asked PALMER for permission to search and seize the computer at his residence. PALMER agreed with one exception which was that the officers only take the hard-drive from the computer. PALMER then signed a Consent to Search Form.

19. Detective Love and other law enforcement officials arrived at the Fairfield Inn Hotel located at 5727 North Federal Hwy. Detective Love took custody of the registration card, which showed JOHN PALMER, had rented room #109. Detective Love

put the magnetic door card, which he had obtained from PALMER's top shirt pocket, into the door slot and the door to room #109 opened. Numerous items which PALMER had brought to the room were found, including: a VCR, adult videotapes (some rented, some homemade), dildos, handcuffs, rope, a bondage chain assembly kit, a whip, a laptop computer, and an alarm clock with a pinhole camera that had audio and visual capabilities.

20. After leaving the hotel room, Detective Love then went to PALMER'S residence at 1500 South Ocean Dr. #1502 Pompano Beach, Fl. for the purpose of searching and seizing the hard-drive in PALMER'S computer. Detective DeYoung of the Broward County Sheriffs Office met Detective Love at PALMER'S residence. PALMER stated to Detective DeYoung that he was the primary user of the computer, and that his wife and daughter did use the computer, but only on rare occasions. PALMER directed Detective DeYoung to the computer, which was identified as a generic IBM clone computer. Detective DeYoung observed two hard drives installed in the computer.

21. After removing the two hard-drives, Detective DeYoung went to the LEACH Task Force computer forensic lab located at the Florida Department of Law Enforcement, Broward Field office and generated a duplicate of each hard-drive of forensic examination.

22. At the Fort Lauderdale Police Department, PALMER was read his Miranda Rights and signed a Miranda Rights Waiver from. He agreed to talk on a limited basis. Detective Love asked him why he met with him at the park and PALMER stated "he was going to turn 'Richie' in to his parents." Detective Love then asked him why, if he

intended to turn him into his parents, he didn't just call his mother or father, since he had RICHIE'S telephone number? PALMER did not respond to that question. Detective Love asked him if there were any sexual photos of children under the age of eighteen on his computer and he stated "there are around two hundred photos in my computer which I downloaded from the Internet." He would not say if there were any child pornography photos.

23. Detective Love asked PALMER if he had any aliases and he stated no. Detective Love wrote in "GOODDADDY9999" on some processing forms, and PALMER stated "That's a new screen name for me, among others."

24. America On-Line records and subscriber information for "GOODDADDY9999" shows the account to be registered to BERNADETTE DZIERZAK 1500 S. Ocean Blvd. #1502, Pompano Beach, Fl. 330627. It shows additional screen names of deenski, gent9999, generoguy, susyolivia, y2kinorlando as well as GOODDADDY9999. On January 4, 2000, the date of the first contact, "GOODDADDY9999" was on line for 133 minutes, within the time frame "GOODDADDY9999" and Detective Love had Internet contact on America On-Line. It also shows that on January 5, 2000, the date "GOODDADDY9999" sent Detective Love the first e-mail, "GOODDADDY9999" was on line at 1436 hrs. for ten minutes.

25. Detective R. DeYoung of the Broward County Sheriffs Office completed his forensic analysis of the two computer hard-drives taken from PALMER'S computer. The forensic examination of one hard-drive revealed an absence of any computer file images or data. The hard drive was, in essence, absent of electronically stored data, with the

exception of four files. The forensic examination of the second hard drive revealed the presence of ten (10) computer file images depicting persons under the age of eighteen engaged in actual or simulated sexual activity and or lewd exhibition of the genitals. Based upon detective DeYoung's training and experience, persons depicted in the ten (10) computer images are under the age of eighteen.

FURTHER AFFIANT SAYETH NAUGHT

TERRI D. PATTERSON, SA-FBI
Special Agent,, FBI

Sworn to and subscribed before
me this ___ day of January, 2000.

BARRY S. SELTZER
U.S. MAGISTRATE JUDGE