UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6034-CR-GOLD

UNITED STATES OF AMERICA          )
                                  )
v.                                )
                                  )
JOHN PALMER                       )
                                  )
_____)

**NIGHT BOX
FILED**

FEB 2 8 2005

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

### UNITED STATES' RESPONSE TO MOTION TO
### MODIFY CONDITIONS OF SUPERVISED RELEASE

The United States of America, by and through undersigned counsel, hereby files this response to Defendant, JOHN PALMER's Motion to Modify Conditions of Supervised Release. Defendant seeks to modify his conditions of supervised release by eliminating the requirement that he "participate in sex offender treatment to include psychological testing if deemed necessary". The United States Probation Office has deemed it necessary that PALMER participate in sex offender treatment. Because Defendant needs sexual offender specific therapy, and can benefit from that therapy, Defendant's Motion to Modify should be denied.

Defendant contends that he does not need, nor will he benefit from sexual offender group and individual therapy. He attaches a copy of Dr. Stuart Brown's Evaluation Report and concludes that such therapy will not be beneficial. Another mental health professional, Dr. Lori Butts, who has examined and evaluated Mr. PALMER, believes that such sexual offender treatment is necessary.

Defendant was convicted of attempting to entice and coerce an individual under 18 years of age to engage in a sexual act. Although he pled guilty to the crime, PALMER continues to maintain that he had no ill motives towards the child and that he was planning on meeting with the child to return the child to his parents. Even to this day, after spending 37 months in prison and spending time on supervised release, PALMER continues to deny his culpability.

On January 13, 2004, when Defendant was first released from prison and began serving his term of supervised release he was examined and evaluated by Dr. John Morin. At that time, Dr. Morin found that PALMER continued to be in denial and would benefit from counseling. On January 5, 2005, PALMER was seen by Dr. Lori Butts of the Clinical and Forensic Institute, who believes that PALMER is in need of sexual offender specific psychotherapy. A copy of her report is attached as Exhibit 1. (Included in Exhibit 1 is a an Interview and Examination Report by Certified Polygraph Examiner Robert N. Hamilton and a Report of Initial Evaluation by Dr. John W. Morin). Dr. Butts found that PALMER still continues to deny his criminal intent. When asked to describe what happened, Mr. Palmer stated, "it was the third time I was attempting to nab children, who were prostituting in chat room to turn them over to what I hoped were caring and unaware parents or guardians." See Exhibit 1, page 2. Such denials are in direct contrast to e-mail

communications that PALMER had with an undercover agent setting up the meeting where PALMER was arrested.[1]  Such statements are a contradiction to PALMER's claim that he was going to turn the children over to their parents.

Dr. Butts found Mr Palmer was not fully forthcoming with the details of the allegations against him.  Dr. Butts found that PALMER demonstrated thoughts and behaviors consistent with sexual offenders.  She also found that PALMER's behavior was manipulative, that he has limited insight into the significance of his offense behavior and that he exhibits poor judgment.  She concluded that "such individuals should be considered to pose a significant risk to the community if not closely supervised and if not involved in structured sex offender specific treatment."  See Exhibit 1, Page 3.  Finally, Dr. Butts wrote:

> Mr. Palmer requires sexual offender specific therapy. Mr. Palmer may have some difficulty with adjustment to the structure of the treatment considering the numerous methods that he has employed to try to avoid sex offender treatment. Nevertheless, it is expected that group treatment will offer Mr. Palmer the support needed to accept responsibility for his offense, to evaluate

---

[1]     In a series of e-mail communications in a chat room titled "BI-DADS", PALMER, wrote to an undercover agent he believed to be a "Richie", a 14 year old boy. "hello Richie . . . i am in ft laud looking to spoil younger guy. . . i like to suck a young guys cock and balls and tongue his ass and make him feel good. . . i like to get him off again and again . . .  just lie back and let me suck your cum out again and again."

In exchange for sex, PALMER offered to spoil "Richie" by buying him a digital scanner, a digital camera, leather jacket and give him money.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed/sent via facsimile this ___28th___ day of February, 2005, to: Maury Halperin, Esquire, 1326 SE 3rd Avenue, Fort Lauderdale, FL 33316.

LAURENCE M. BARDFELD
ASSISTANT U.S. ATTORNEY

the behaviors and thought patterns that led to his sexual offense, and to develop effective plans to relapse prevention. Additionally, it is recommended that Mr. Palmer participate in monthly individual treatment to address individual issues and to monitor his treatment progress. See Exhibit 1, page 4.

Additionally, a polygraph test was given to Mr. Palmer. During that examination he was deemed to have "significant reactions to the question concerning his planning to engage in sexual activities with his victim." PALMER then "made statements that he felt Probation/Parole would require him to attend Therapy now based on this test. His biggest concern was the drive time and money ." See Polygraph Examination Report, Post Test Interview at page 3.

Since it appears that PALMER continues to deny his involvement in the original crime, PALMER will not be helped until he recognizes that he needs help. Sexual offender therapy is necessary and JOHN PALMER's conditions of supervised release should not be modified.

Respectfully submitted,

MARCOS D. JIMENEZ
UNITED STATES ATTORNEY

By: _____
LAURENCE M. BARDFELD
Assistant U.S. Attorney
500 East Froward Blvd., #700
Ft. Lauderdale, Florida  33394
(954) 356-7255, Fax: 356-7228
Fla. Bar No. 712450



# CLINICAL & FORENSIC INSTITUTE, INC.

*fmb*

JOHN A. SPENCER, PH.D.
CLINICAL DIRECTOR
LICENSE: # PY0003204

## R.E.A.C.H.
*Responsibility through Effort, Awareness, self-Criticism, & Honesty*

LORI J. BUTTS, J.D., PH.D.
TREATMENT DIRECTOR
LICENSE: # PY0006490



### Behavioral Assessment

TO:    Ms. Patricia Brinson, LCSW
       United Stated Probation Officer
       United States District Court Southern District of Florida
       6100 Hollywood Boulevard
       Suite 501
       Hollywood, Florida 33024-7938

Client:              John Palmer
PACTS#:              62572
Date of Birth:       07/26/1932
**Date of Evaluation:**  01/05/2005
Date of Report:      01/21/2005
Clinician:           Lori Butts, JD, PhD

**Sources of Information:**
Clinical Interview
Client Demographic Form
HARE PCL:SV
Initial Evaluation, John Morin, PhD (1/13/04)
Mental Status Examination
Minnesota Multiphasic Personality Inventory, second edition (MMPI-2)
USPO Referral to Treatment Program

Information provided by client:
       Aldo Morales, MD, 1/10/05 Letter
       Stuart Brown, EdD, JD, 12/30/04 Report

**Reason for Referral:**
Mr. Palmer is a 72-year-old, married, Caucasian male who was referred for a Sex Offense Specific Evaluation by the United States Probation Office with the REACH program. Mr. Palmer pled guilty to Attempting to entice and to coerce to engage in a sexual act an individual under 18 years of age. He is currently serving a term of three years of probation. The purpose of this evaluation is to

4801 S. UNIVERSITY DRIVE, SUITE 301-EAST
DAVIE, FLORIDA 33328

3767 LAKE WORTH ROAD, SUITE 100
LAKE WORTH, FLORIDA 33461
PH. (561) 968-1212 · FAX (561) 968-1207

PALMER, John                                                          Page 2

determine if Mr. Palmer would benefit from a course of sexual offender-specific psychotherapy.

**Description of Offense:**

The circumstances of Mr. Palmer's instant offense were not made available. However, the factual information provided in Dr. Morin's evaluation appears to be based on the official description of offense. For the purposes of this evaluation, Mr. Palmer was encouraged to describe the factual allegations of his charges. Unfortunately, during the course of the evaluation, Mr. Palmer was not fully forthcoming with the details of the allegations against him. Due to the nature of the referral question and to Mr. Palmer's lack of responsiveness, his self-report is of limited reliability.

When asked to describe what happened Mr. Palmer stated, "it was the third time I was attempting to nab children, who were prostituting in chat room, to turn them over to what I hoped were caring and unaware parents or guardians". Mr. Palmer also denied any responsibility for the allegations.

**Biopsychosocial Background:**

According to his self-report, Mr. Palmer was born in New York. He was raised by his biological father and by his step-mother. Mr. Palmer reported that he had allegedly been sexually abused by a non-family member. Mr. Palmer denied physical, emotional, or sexual abuse by his parents. Dr. Morin's report indicated that other records suggest that Mr. Palmer's father allegedly sexually abused Mr. Palmer's stepsister over a period of several years.

Mr. Palmer reported that he is currently married to his third wife and has been married to this woman for 28 years. Mr. Palmer admitted to having two affairs during his current marriage. Mr. Palmer reported to Dr. Morin that his first sexual experience was at age thirteen and Mr. Palmer estimated having engaged thirty-five sexual partners in his lifetime. Conversely, during the course of this evaluation, Mr. Palmer reported that he first performed sex at age 20 and that he has had 20 sexual partners. Mr. Palmer reported that he has two adult male children. He also reported that he has a 12-year-old daughter with whom he resides.

Mr. Palmer reported that he received his GED and has attended some college courses but did not attain a degree. Mr. Palmer also reported that he served in the Army from 1953 to 1955 and that he received an Honorable Discharge. Mr. Palmer reported that he is currently retired from several different occupations. He stated that he was a hotel manager in Chicago, owned a Charter sailboat business, and worked for his son selling computer systems.

Mr. Palmer has a significant history of alcohol abuse and he reported that he spent one month in treatment in 1991. Mr. Palmer has been treated by different mental health personnels in order to obtain opinions regarding his need for sex

offender treatment.  Mr. Palmer reported that he has attended treatment for "depression" in the past.  Mr. Palmer denied a familial history of mental illness.

Mr. Palmer was recently diagnosed and treated for lung cancer.  He is currently taking various medications including highly addictive narcotic analgesics.

**Mental Status:**
Mr. Palmer arrived on time for his appointment. He was casually dressed and he was appropriately groomed. He was oriented in all spheres.  He exhibit no difficulty with his verbal recall of remote information.   His verbal responses were within the normal range, but his inflections and affective displays were significantly muted.  His body posture was nonengaging and his movements were minimalistic.  He was hesitant in his answers.  He completed simple cognitive operations appropriately.  He was able to hold eye contact for an extended period without distraction or increasing his affective level, and although he was certainly not forthcoming, he never appeared to miss the thrust of the questions.  His intelligence is estimated to be in the Average/Above Average range, although he could be experiencing some decrements relative to his basal level due to aging and medical conditions.  His ability to abstract appeared commensurate with his level of intellect.  He denied suicidal and/or homicidal ideation, plan, or intent.

**Assessment Results:**
Mr. Palmer completed the Minnesota Multiphasic Personality Inventory, second edition (MMPI-2). He completed the instrument in an appropriate amount of time. The client stated that he understood the directions of the test.  Mr. Palmer's profile appears to be valid.  Mr. Palmer's responses were consistent with individuals who use somatic symptoms to avoid thinking about, and dealing with, psychological distress.  These individuals have concern about their physical symptoms.  Individuals who score similarly to Mr. Palmer lack insight into their own behavior and are resistant to interpretations that psychological involvement could impact physical symptoms.  Moreover, these individuals have a poor prognosis for treatment because they have little motivation for any type of psychological intervention.

**Diagnosis and Clinical Formulation:**
During the assessment, Mr. Palmer demonstrated thoughts and behaviors consistent with sexual offenders.  Mr. Palmer's behavior during this assessment suggests that he is manipulative, that he has limited insight into the significance of his offense behavior, and that he exhibits poor judgment.  Such individuals should be considered to pose a significant risk to the community if not closely supervised and if not involved in structured sex offender specific treatment.  Due to the nature of his offense and to other reported personal information, Mr. Palmer appears to be an individual who fulfills his needs and desires at the expense of others.  The following diagnoses are impressions offered in

PALMER, John                                                        Page 4

accordance with the Diagnostic and Statistical Manual of Mental Disorders
(DSM-IV):

|       |                                          |
|-------|------------------------------------------|
| Axis I:   | Paraphilia NOS                       |
|           | Alcohol Abuse (client reports remission) |
| Axis II:  | Deferred                             |
| Axis III: | Lung Cancer                          |
| Axis IV:  | Currently on Probation               |
| Axis V:   | Current GAF = 60                     |

**Prognosis and Recommendations:**
Mr. Palmer requires sexual offender-specific psychotherapy. Mr. Palmer may
have some difficulty with adjustment to the structure of this treatment considering
the numerous methods that he has employed to try to avoid sex offender
treatment. Nevertheless, it is expected that group treatment will offer Mr. Palmer
the support needed to accept responsibility for his offense, to evaluate the
behaviors and thought patterns that led to his sexual offense, and to develop
effective plans for relapse prevention. Additionally, it is recommended that Mr.
Palmer participate in monthly individual treatment to address individual issues
and to monitor his treatment progress.

It is recommended that Mr. Palmer should not be permitted access to
pornography or to other similar forms of sexual stimuli. This prohibition includes
abstaining from the Internet and phone sex numbers. Additionally, it is
recommended that Mr. Palmer be prohibited from unsupervised contact with
minors including his adolescent daughter.

It is recommended that Mr. Palmer refrain from using intoxicating substances or
consuming alcohol as the use of intoxicating substances and alcohol will likely
increase the risk of re-offending by lowering inhibition levels and by impairing
judgment. It is recommended that should alcohol or substance abuse become a
problem Mr. Palmer should participate in a substance abuse program while
attending REACH.

Thank you for referring this client to our program. Should you have any questions
please feel free to contact our offices.


Sincerely,

Lori J. Butts, J.D., Ph.D.

# CONFIDENTIAL

# INFORMATION VERIFICATION SERVICES

## TREATMENT PROVIDER

### Dr. LORI BUTTS

## INTERVIEW AND EXAMINATION REPORT

### John Palmer
### DOB 07/26/32

## CASE # 01190503

## Interview and Examination Date
## Wednesday January 19, 2005

### Robert N. Hamilton
**Certified Polygraph Examiner**
**Post Conviction Sex Offender Polygraph Examiner**

# CONFIDENTIAL

# Therapist Integrity Issues

**In the 6 months prior to the alleged incident:**

**1. Did you find it easy to lie?  No**

**2. Did you make a habit of lying?  No**

**3. Did you lie to your friends or family about your activities?  No**

**4. Did you lied to your employer about your work activities?  No**

**5. Did you lie to someone who trusted you about where you have been? No**

**6. Did you lie to someone who depended on you?  No**

**7. Did you get into some serious trouble that you lied on any important documents, papers or reports about it? No**

**8. Did you get into some serious trouble that you lied to someone who trusted you about it?  No**

**9. Did you get into some serious trouble that you've lied to get yourself out of trouble?  No**

**10. Did you get into some serious trouble that you've had to lie to protect yourself?**

## Denial Issues of John Palmer

1. **Who made the accusations – Police Department**

2. **What are the accusations against you – Enticing a minor for sexual purposes over the Internet.**

3. **Why did you arrange to meet the complainants – met to talk with the complainant to advice him about a sexual relationship he was involved in.**

4. **Was it your plan to engage in any type of sexual activities with the complainants after you met them – No**

5. **Did you masturbate yourself fantasizing about any sexual activities that you might have with the complainants before you met them - No**

6. **Did any physical contact occur with any of the complainants – No**

7. **Did any sexual activities occur with any of the complainants – No**

## Post Test Interview

**Mr. Palmer was advised that he did have significant reactions to the question concerning his planning to engage in sexual activities with his victim. He stated that he did not understand why and asked if I felt he was a pedophile. I told him that I was not the proper person to have such an opinion and his reactions were not saying that. He then produced a letter from a Physician that states that he MAY have sub and unconscious sexual desires for juveniles. Mr. Palmer wanted to know how to figure this issue out. I told him that Therapy was the probably proper environment to deal with these issues.**

**Mr. Palmer made statements that he felt that Probation/Parole would require him to attend Therapy now based on this test. His biggest concern was the drive time and money.**

**Since no further information was disclosed no further examinations were conducted.**

# Polygraph Examination Report for John Palmer

The Air Force MGQT format was used for this examination.

This examination is in compliance with all Sexual Offender testing methods as required by the American Polygraph Association and the Florida Polygraph Association?

The questions below were those used in the examination and provided by the examinee's Treatment Provider and/or Probation Officer.

**Did you plan to engage in any type of sexual activities with the complainants of your current charges after you met with them?**
  Answer **NO**

**Did you masturbate yourself fantasizing about any sexual activities that you might have with the complainants of your current charges before you met with them?**
  Answer **NO**

# RESULTS AND CONCLUSION

The Backster System was used to score three complete polygraph charts.

After a complete evaluation of the examination, the results are considered to be

# Significant Reactions

# INFORMATION VERIFICATION SERVICES
## 786-388-0294

## POLYGRAPH EXAMINATION REPORT

**To: Patricia Brinson**

**From: Robert Hamilton, CPE**

**Ref: Polygraph Examination of John Palmer**

**Date of Examination:  01/19/05**

The following questions used were those that were requested by the examinee's Treatment Provider and/or Probation Officer.

**Did you plan to engage in any type of sexual activities with the complainants of your current charges after you met with them?**
Answer **NO**

**Did you masturbate yourself fantasizing about any sexual activities that you might have with the complainants of your current charges before you met with them?**
Answer **NO**

## RESULTS AND CONCLUSION

The Backster System was used to score three complete polygraph charts. After a complete evaluation of the examinations, the results are considered to be

# Significant Reactions

# Clinical & Forensic Institute, Inc.

Examiner:  Robert Hamilton                    Date:  01/19/05

| Client | Procedure | Charge | Payment |
|---|---|---|---|
| John Palmer | Polygraph | $250.00 | Prepaid |

## CLIENT HEALTH DATA

**If the answer is yes to any of the questions below answer them on the back of this page with the appropriate question number at the start of each answer:**

1.  Are you presently under a doctor's care, including pregnancy?    Yes__X__    No____

2.  Has a doctor prescribed any type of medications in the last 12 months?  Yes__X__    No___

3.  Have you taken any prescription medications in the last 48 hours? Yes__X__    No____

4.  Have you consumed or used any alcohol or drug illegal in the last 48 hours?
    Yes____    No__X__    If yes, what, when and how much on the back of this form

5.  Are you experiencing any physical discomfort besides being nervous?  Yes__X__    No____

6.  Please check the appropriate box if you have the following:
    - Heart Problems                    Yes____    No__X__
    - High Blood pressure                          Yes__X__    No____
    - Respiratory problems         Yes__X__    No____
    - Recent Surgery                               Yes__X__    No____
    - Recent Accidents or injuries     Yes__X__    No__X__.

7.  Hours of sleep in the last 24 hours - __6__ Hours

8.  Normal amount of sleep in 24 hour period - _6-7_ Hours

9.  How long since you last ate - _6 HRS_ Hours    What _grilled cheese Sand_

10. How many previous polygraphs have you had _1_
    When was the last polygraph _Apr 2004_

11. Describe how you feel about taking the polygraph examination today
    _____ANXIOUS TO COOPERATE in ANY WAY that_
    _Lets the TRUTH be Known About me_



**Center for Offender Rehabilitation and Education**

*Oakbrook Counseling Center, P.A.*

5950 West Oakland Park Boulevard, Suite 107, Fort Lauderdale, FL 33313   (954) 735-6240

62572
3012

# REPORT OF INITIAL EVALUATION

CLIENT'S NAME: John Palmer          DATE OF EVALUATION: 1/13/04

PROBATION OFFICER: Patricia Brinson

**SOURCES**
Clinical Interview
Referral to Treatment Program
U. S. District Court Judgment, with Standard and Additional Supervised Release Terms
Descriptions of Mr. Palmer' offenses and arrests and of his life history

**BACKGROUND INFORMATION**

Mr. Palmer was seen initially for a clinical interview on the above date. He was referred for evaluation and treatment as part of his probation agreement. Mr. Palmer was informed that an initial evaluation was being undertaken in order to assess his amenability for treatment. He was also informed that the information he was providing was not confidential and would be shared with his probation officer in the form of a report.

Records indicate that Mr. Palmer pleaded guilty to one count of "Attempting to entice & coerce an individual under 18 years of age to engage in a sexual act." The description of his offense provided by the USPO states that Mr. Palmer initially contacted an undercover police detective posing as a 14 year old boy in a chat room titled "BI-DADS." Mr. Palmer reportedly wrote to the detective, "I like to suck a young guy's cock and balls and tongue his ass and make him feel good," and "Just lie back and let me suck your cum out again and again...." Following this initial communication, further phone calls and emails were exchanged and Mr. Palmer arranged to meet the detective at a motel for sex. When Mr. Palmer arrived for the meeting he was arrested. A subsequent search of the motel room he had rented uncovered chains, whips, handcuffs, sex video tapes, and other sexual accoutrements. A later search of Mr. Palmer's computers revealed thirteen images of minors involved in sexual acts, simulated sexual acts, or "lewd exhibition of the genitals." When he was asked by the undercover detective why he had agreed to meet him (posing as a boy), Mr. Palmer reportedly stated that he was

PALMER, J.                                                                          2

going to turn him over to his parents. When the detective then asked why he hadn't simply called the boy's parents, since he had the telephone number, "the defendant did not have a response."

In the present interview Mr. Palmer again cited his intention to turn any child over to his parents. He denied having any intention of having sex with a child. Mr. Palmer pleaded guilty to the charge and was sentenced to 37 months incarceration followed by three years of supervised release. Mr. Palmer reported having been arrested one time previously, in 1948, for "joyriding."

## INTERVIEW WITH MR. PALMER

Mr. Palmer was moderately cooperative during the initial interview. All of the information reported in this (Interview) section, except where noted, was provided by Mr. Palmer.

### *Family History*

Mr. Palmer is a seventy two year old white male (DOB: 7/26/32) who said he was born and raised in New York City as an only child. He stated that his parents were both killed in an automobile accident when he was three, and he was raised by his grandparents. (Records contradict this account, indicating he was raised by his father until age 15, when he was placed with his grandparents). He described his childhood as "normal." He described his grandfather, a banker, as "an excellent father who was inspiring." He said he was close to his grandfather. He said his grandfather was not strict with him, and punished him only through restrictions. He denied any drinking or drug use by his grandfather.

Mr. Palmer called his grandmother, who was a housewife, "adequate...a doting mother." He said he was close to her as well. He denied any drinking or drug use by his grandmother. He said she too was not strict, and engaged only in "joint punishing" with his grandfather. He denied any excessive or abusive punishment by either grandparent.

Mr. Palmer denied ever being physically, emotionally or sexually abused by anyone. (Records indicate that he was sexually abused while living in a reform school for juvenile delinquents at age 15. Records also indicate that while Mr. Palmer was in his father's care, his father sexually abused Mr. Palmer's stepsister over a period of several years).

### *School and Work History*

Mr. Palmer reported that his attendance in school was "average" and his grades were "B average." He said he could not recall if he was ever in serious trouble in school. He denied ever being suspended or expelled from a school. He reported dropping out of school in the ninth grade "because I wanted to." He then "bummed around the country," supporting himself working odd jobs. At 16-17, he said, he began taking night classes again and earned a GED. He said he took some college courses but did not earn a college degree. He reported serving in the military from 1952-53 and receiving an Honorable Discharge.

Mr. Palmer reported that his longest job, lasting 17 years, was as a hotel manager. Otherwise, he has always worked for himself. For twenty years, he said, he and his wife ran a boat charter business in the West Indies, and on the side he built houses. Currently, he indicated, he is retired.

PALMER, J.                                                                                    3

*Substance Use*

Mr. Palmer stated that he does not drink and has not since 2000. Previously, he said, he drank 10-20 drinks per day. He said he is a "recovering alcoholic." He attended AA meetings for 2-3 years before going to prison, he said, but has not attended meetings since then. He indicated that he had to use a wheelchair in prison to get around, which made attending meetings difficult, and he added, "I didn't think it [AA] would be productive." He reported trying marijuana and cocaine each "a couple of times" when he was younger, but denied ever using either drug regularly. He reported using "Dexamil" when he was younger, which he said contained an amphetamine and gave him energy. He denied other drug use.

*Relationship History*

Mr. Palmer stated that he is heterosexual. He said he has been married four times and has three children, including sons 41 and 42, and a daughter, 11. (Records indicate he has two other adult sons as well). He said his current marriage has lasted since 1978, and he continues to live with his wife and his daughter. He indicated that his first sexual experience was at age 13 with a partner "about the same age." He estimated having thirty five sexual partners in his lifetime.

*Sexual Offenses*

Mr. Palmer provided a lengthy and convoluted description of the events that led to his arrest. He stated that during late 1999 and early 2000 he was involved in a computer-chat relationship with a 17 year old girl "who wanted to trade sex for money." The girl then told him that she wanted him to talk (over the computer) with her 13 year old brother "about meeting him because he needed to learn about sex." Mr. Palmer stated that the girl told him her brother "was being abused by his uncle and he didn't know any better." When Mr. Palmer than chatted with the boy, he said, the boy "told me he needed a leather jacket and a scanner. I don't remember what I said. I was enticing him because she said she would come along with him to meet with me. The meeting was supposed to be with both of them. ...She said I should talk to him about sex." When the evaluator inquired whether the girl meant him to talk to her brother as a parent would, Mr. Palmer replied, "ostensibly, at the time." When he was asked if the chatting then turned sexual in nature, Mr. Palmer said, "I believe so."

Mr. Palmer then reported that during the same time period he had actually met three young girls, 15-16 (two on one occasion, and one on another occasion) over the Internet for sex. He stated that over the Millenium celebration period he had been left by his wife and daughter, who were vacationing, and in his isolation went to a chat room called "People who like older men." There, he said, "I had contact with 50-60 children who were online for sex. I was responding to them. These people were gross." He said he had tried to arrange meetings with all 50-60 (who were "predominantly girls"), because "that was the gist of this chatroom." He stated that he had rented hotel rooms and "lured them to the hotel." He then said he had never before had sexual contact with teens. When asked why he started at this time, he said, "Because I have a daughter growing up right under my nose."

Mr. Palmer than took an abrupt turn in his account and stated that he had not, after all, had sex with any of the children, including the three girls he had previously mentioned. "I secured them, I handcuffed them, called their parents, and turned them

PALMER, J.                                                                                                    4

over," he said. He then repeated, "I never had sex with them." When challenged on the contradictions in his story, he insisted, "I was just doing it as a vigilante. I haven't committed any sex offense."

Mr. Palmer then denied ever molesting any child or having any sexual contact with a minor. He denied ever exposing himself, peeping, making obscene phone calls, masturbating in a public place, rubbing against strangers for sexual stimulation, or raping anyone.

## MENTAL STATUS

Mr. Palmer' speech was appropriate in volume and speed. He was generally coherent, logical and goal-directed, except when he was rendering his account of his arrest. He displayed no overt preoccupations, delusions, hallucinations, or other evidence of severe psychological disturbance. However, he appeared distracted throughout the interview. He signed the various release forms and treatment agreement forms presented to him without looking at them. His memory, appeared adequate, his insight and judgment marginal. His mood was slightly depressed, his affect appropriate. He denied ever being in a psychiatric hospital but reported using Valium, "sporadically," over the past five years. He reported seeking psychotherapy after his arrest in 2000 and attending weekly therapy sessions for approximately one year, until he went to prison. He said he did not receive any counseling in prison. He appeared to be functioning in the average range of intelligence.

When asked if he had ever thought about killing himself he replied, "Not lately." He explained that he had such thoughts following his arrest, but had never made a suicide attempt, and had made only "rough plans." He said thoughts of suicide came "a few times" in the months following, but he denied having any such thoughts since 2000.

*DSM-IV DIAGNOSIS*:   799.9  Diagnosis deferred

## RISK ASSESSMENT
### Static Risk Factors

Risk factors for sex offense recidivism have been found to fall into two main clusters. The first cluster of risk factors relates to *sexual deviance* and to DSM-IV diagnoses of Paraphilias. For example, a strong, enduring sexual attraction to children (leading to a diagnosis of Pedophilia) may be sufficient, by itself, to render an individual a menace to the health and safety of others by virtue of his likelihood to commit acts of child sexual abuse. The second cluster of risk factors relates to *psychopathy* and to a DSM-IV diagnosis of Antisocial Personality Disorder. Although Antisocial Personality Disorder, by itself, need not predispose an individual toward sexual offending, when combined with any significant indicators of deviant sexual interests, it may lead to a high likelihood of sexual offending.

In a review of 61 studies involving almost 29,000 sexual offenders, researchers identified a number of *"static"* (unchangeable--historical or demographic) risk factors that correlate with sex offense recidivism. These static factors include such items as prior sex offense arrests or convictions, the offender's age, victim gender, relationship to

victim (intrafamilial vs. extrafamilial), age at onset of sex offending, married vs. unmarried, and variety of sexual crimes.

By combining such risk factors into scales, then weighting and testing the scales for predictive accuracy, several researchers have developed actuarial risk prediction instruments. Scoring Mr. Palmer on such an instrument allows his risk for sexual reoffense to be estimated by noting the measured sexual recidivism rate of other convicted sex offenders with the same score. Since an actuarial score merely places an individual in a "class" of people attaining the same (or similar) score, it can not be used to predict that any given individual will act in a particular way. It can, however, provide important probability data with which to inform one's expectations regarding a particular individual.

### *Static-99*

Based on available evidence, Mr. Palmer scores 1 point on the Static-99 (out of a possible 12), suggesting that his risk for sexually reoffending (all other factors being equal) is approximately 6% over a five year period, 7% over ten years, and 7% over a 15 year period post-release. In other words, approximately 6-7% of convicted sex offenders with a Static-99 score of 1 will be rearrested for new sex offenses over the stated time periods. A score of 1 is considered indicative of *"Low"* risk for sexual reoffense.

### **Dynamic Risk Factors**

It does not appear that Mr. Palmer displays any known or hypothesized dynamic risk factors for sex offense recidivism. Therefore, his Static-99 estimate should be considered the best available estimate for his recidivism risk.

Although, *on average*, substance abuse appears to be unrelated to the risk of sex offense recidivism (Hanson & Bussiere, 1996), in cases where substance abuse has been involved in previous offenses, it may be a risk factor for future offenses. As noted above, Mr. Palmer indicated that he is "a recovering alcoholic," but he is not attending AA meetings and apparently has not been for several years. If, in fact, he has used alcohol to disinhibit his deviant sexual urges, and if he relapses, it is likely that such a relapse will increase his risk for reoffense. For this reason, a referral to a qualified substance abuse treatment program for evaluation and treatment is appropriate.

### **Situational Variables**

A final component of a comprehensive risk assessment involves consideration of situational variables that may contribute to the likelihood of sexual reoffense. Mr. Palmer currently is not working, and so has no reason to come into contact with children outside his family. However, Mr. Palmer indicated that he is living with his wife and his 11 year old daughter. *Given Mr. Palmer's demonstrated interest in sex with children, as well as his admissions in the present interview of having attempted to arrange meetings with 50-60 children—including girls—this living situation is clearly inappropriate. The fact that Mr. Palmer's known offense involved arranging to meet a boy does not imply that he is not a threat to molest a girl, as up to 20% of child molesters molest children of both sexes. Nor should the fact that the planned victim of his instant offense was not a family member be taken to imply that Mr. Palmer does not represent a threat to his own daughter. Mr. Palmer should be prohibited from living with any children until such time as he has made significant treatment progress and has passed a full-disclosure polygraph examination that clarifies whether he has previously had sexual contact with young girls.*

PALMER, J.                                                                          6

As with all offenders, his compliance with the rules of his probation and of the treatment program should be monitored through regular polygraphing.

## RECOMMENDATIONS

Mr. Palmer presents as a sex offender in denial of his crime. Although he initially appeared in the present interview to admit to molesting three teenage girls, he then insisted that although he did meet with these girls in hotel rooms, he did not, in fact, have sex with them, but instead "handcuffed" them and called their parents. Actuarial assessment of Mr. Palmer's static risk factors shows his risk for sexual reoffending to be relatively low (5-13%). Of known dynamic risk factors, Mr. Palmer appears to display none. However, he reportedly has a history of abusing alcohol, and calls himself a "recovering alcoholic." Any return to drinking by Mr. Palmer should be considered a risk factor for reoffense. As with all offenders, the full extent of Mr. Palmer's sexual deviance will remain unknown until he produces a truthful full-disclosure polygraph.

Mr. Palmer will be placed in a treatment group. Real treatment will begin only if and when he is willing to fully acknowledge his problem and openly engage in the treatment process. At that point skills training will be emphasized to help him develop new approaches to dealing with his deviant urges. Ultimately, he needs to design and implement a permanent relapse prevention plan in order to successfully complete treatment.

*In addition to his sex offender treatment, Mr. Palmer should be referred to a qualified substance abuse program for an evaluation. . He should be required to follow the treatment recommendations following from such an evaluation.*

*It is important to note that commonly used tools for estimating risk for sex offense recidivism to not account for the risk incurred by having a known sex offender living in a home with children. As noted above, Mr. Palmer, despite having demonstrated an interest in sexual activity with a 14 year old boy, is currently living in a home with an 11 year old girl. He should be immediately removed from this residence. If he is to be allowed to return to this situation he should be required to prove through a truthful full-disclosure polygraph that he has never had any sexual contact with any minor female. In addition, he should be required to take and pass regular monitoring polygraph exams to ensure that he is not having sexual contact with his daughter. In addition, Mr. Palmer should be required to arrange for his wife to attend psycho-educational counseling to ensure that she understands the dangers that are represented by men who have a sexual interest in children, that she can recognize the signs of sexual abuse in children, and that she is prepared to act to protect her daughter should she suspect any inappropriate activity by Mr. Palmer. If he fails to comply with any of these precautionary measures, Mr. Palmer should not be allowed to live with his daughter or any child.*

Since sex offender treatment is not something that is "done to" an offender but a process in which his full participation is necessary, it is never possible to predict how long treatment will take. Offenders who become committed to treatment generally are able to complete the treatment process in 18-36 months.

PALMER, J.                                                      7


_____          DATE: _1/22/14_____
John W. Morin, Ph.D.
Licensed Psychologist